UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARRIS HUNT & DERR, P.A.,

    Plaintiff,

v.                                                  Case No: 8:21-cv-1457-KKM-TGW

BLAKE TAYLOR,

    Defendant.
_____

## ORDER

Harris Hunt & Derr (HHD) claims that Blake Taylor breached her agreement to pay a reasonable fee for its representation in her divorce proceedings. Taylor brings counterclaims for malpractice and professional negligence, alleging that HHD was negligent by overcharging her, failing to fully inform her, and failing to present her fees request to the trial court. Because a genuine dispute of material fact exists as to the question of whether HHD's fees were reasonable, the Court denies HHD's Motion for Summary Judgment. (Doc. 46.) But because there is no genuine dispute of material fact on Taylor's statute of limitations and failure to mitigate defenses, HHD is entitled to summary judgment as to both affirmative defenses. And because Taylor presents a genuine dispute

1

of material fact as to her counterclaims, the Court denies summary judgment for HHD on the malpractice claims.

I.   UNDISPUTED FACTS

Defendant/Counter-Plaintiff Taylor's ex-husband filed for divorce in 2013. (Doc. 47 ¶ 6.) The divorce proceedings stretched out nearly seven years. (Doc. 47 ¶ 50.)

About a decade before the divorce proceedings commenced, Taylor and her ex-husband entered into two postmarital agreements. (Doc. 47 ¶ 2; Doc. 50-3, Doc. 50-4.) The second agreement required that Taylor's Edward Jones investment account would be treated as her separate property in the event of a divorce. (Doc. 47 ¶ 4.) Importantly for purposes of this action, the agreement also provided that, "in the event of any separation, dissolution, or divorce proceedings, each party shall pay his or her own attorney's fees and costs." (*Id.* ¶ 3.) Taylor's first attorney in the divorce proceedings filed an amended counter-petition for dissolution of marriage requesting that the trial court enforce the second postmarital agreement. (Doc. 47 ¶¶ 7 & 10.)

In December 2014, after ending her relationship with her first attorney, Taylor hired Plaintiff/Counter-Defendant HHD to represent her in the divorce proceedings. (Doc. 1-3; Doc. 47 ¶ 7.) Taylor and HHD entered into a retainer agreement which required Taylor to pay "a reasonable attorney's fee based upon the following

2

considerations," including time required, responsibilities assumed, and the novelty and difficulty of the issues. (Doc. 1-3.)

For the next several years, HHD represented Taylor in various proceedings related to the divorce. (Doc. 50-15.) As part of its representation, HHD moved for Taylor to receive temporary attorney's fees and alimony from her ex-husband. (Doc. 50-14.) In August of 2015, the trial court denied Taylor's request for temporary attorney's fees but granted her $22,000 a month in temporary alimony. (Doc. 47 ¶ 23.) The state court reasoned that, because Taylor had access to investment accounts and alimony, she "ha[d] no actual need for temporary fees and costs." (Doc. 50-14 at 4.) (emphasis omitted). After the ruling, HHD told Taylor that it was "unlikely we will be successful in appealing" the denial of temporary fees because "the Judge did not abuse his discretion" and because HHD "determined from additional research that the Court is able to address the attorney's fee . . . issue at the final hearing despite the Postnuptial Agreement." (Doc. 50-16.)

At some point, Taylor stopped paying HHD's fees. (Doc. 50-2 at 20.) HHD attempted to withdraw as counsel due to nonpayment on January 5, 2018, but the state court denied the motion. (Doc. 47 ¶ 31.) HHD therefore continued to represent Taylor in the divorce proceedings through final judgment on June 25, 2020. (Doc. 47 ¶ 50; Doc. 50-

3

1 at 58.) As of May 7, 2022, the outstanding balance that HHD claims Taylor owes is $176,159.58. (Doc. 50-38 at 4.)

HHD sued Taylor in state court for breach of their retainer agreement. (Doc. 1-3.) Taylor removed the action to federal court and filed an answer raising affirmative defenses and two counterclaims for attorney malpractice and professional negligence. (Doc. 7.)

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings and by her own affidavits" or other admissions on file, point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). If the nonmoving party "fail[s] to make a sufficient showing on an

4

essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Id.* at 323.

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Dareing v. Bank of Am. Corp.*, 705 F. App'x 882, 885 (11th Cir. 2017) (per curiam). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of Taylor, the non-movant.

### III.   ANALYSIS

#### A. Breach of Contract

Under Florida law, a plaintiff must prove three elements to succeed on a breach of contract claim: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). HHD moves for summary judgment on its breach of contract claim on the basis that there is no dispute of material fact over any of these elements or Taylor's affirmative defenses.

HHD meets its initial burden by pointing to evidence in the record that a (1) contract existed requiring Taylor to pay for reasonable legal fees but (2) Taylor stopped paying in 2018 (a material breach), (3) resulting in outstanding invoices. (Doc. 1-3; Doc. 50-38). HHD also meets its initial burden of disproving two of Taylor's affirmative defenses.

5

First, HHD points out that, though Taylor asserted that the claim may be barred by the statute of limitations because the contract was formed in 2014, (Doc. 7 ¶ 9), the breach occurred in 2018, well within the five-year statute of limitations when this action was brought in 2021. (Doc. 46 at 9-10.) Second, HHD argues that Taylor's defense of failure to mitigate is legally insufficient as pleaded because it was a "bare legal conclusion" without any supporting facts and factually insufficient based on the record because HHD attempted to mitigate by withdrawing as counsel and offering to send only one attorney to represent Taylor at trial. (Doc. 46 at 6-7; Doc. 50-17; Doc. 50-28.) Taylor does not address either of these defenses in her response to the motion, so she "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" and HHD is entitled to summary judgment on both affirmative defenses. *Celotex Corp.*, 477 U.S. at 323.The burden then shifts to Taylor to show that a genuine dispute of material fact exists as to the claim. *See Clark*, 929 F.2d at 608. Taylor alleges that there is a genuine dispute as to the amount of damages because the fees billed by HHD were unreasonable. (Doc. 53 at 10=11.) In making this argument, Taylor points to her expert's report, which asserts that "the fees charged were in fact not reasonable by well over 400 hours and in excess of $200,000." (Doc. 50-36 at 9.)

HHD counters that the reasonableness of the attorney's fees does not pose a genuine issue of material fact for two reasons. First, HHD argues that courts often determine the

6

reasonableness of attorney's fees, and so the question of reasonableness should not prevent summary judgment. (Doc. 46 at 8.) Although true that courts often determine the amount of attorney's fees to award when a statute requires it as a matter ancillary to the proceeding, *see, e.g., Nunez v. Allen*, 292 So. 3d 814, 821 (Fla. 5th DCA 2019), the amount of reasonable fees owed by a client to an attorney under a contract is a question of fact to be determined by a jury, *see Chaachou v. Chaachou*, 122 So. 2d 24, 27 (Fla. 3d DCA 1960) (holding that a suit to determine the amount of fees owed by a client to an attorney under a contract for reasonable fees is an action at law to be submitted to a jury); *see also Searcy Funt & De Oliveira, P.A. v. Law Offices of Frank H. Alvarez*, 490 So. 2d 159, 161 (Fla. 3d DCA 1986) (refusing to apply the lodestar method used to award ancillary attorney's fees to breach of contract claims between an attorney and client because such disputes "are ordinary damage actions at law which are subject to trial by jury"); *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 3878297, at *7 (S.D. Fla. Nov. 18, 2009) (noting that "the question of reasonableness of attorney's fees" in an indemnity contract provision "must be determined by a jury" under Florida law) (citation omitted).

Second, according to HHD, experts for both parties determined the fees were reasonable. HHD cites Taylor's expert's deposition, where she concedes that "[t]here were actions taken . . . that were reasonable actions." (Doc. 50-36 at 32.) But HHD neglects

7

the rest of the expert's statement, during which she opined that it was unreasonable for multiple attorneys to take the same actions and that "the amount ultimately charged for three or four different people doing the exact same thing was unreasonable." (*Id.*) HHD also cites its own expert's report, which claims that "the work performed and fees charged by [HHD] were reasonably necessary considering the complex and adversarial nature of the marriage dissolution case." (Doc. 50-37 at 4.) But that same expert goes on to say that "a reasonable amount of time spent on this matter . . . is at least 390 hours" and "a reasonable blended hourly rate for work performed on this matter would be $440 per hour, for a total of $175,000 for the legal services rendered by [HHD] from 2014 through entry of Final Judgment." (Doc. 50-37 at 5.) These statements do little to support the conclusion that HHD's total fees amounting to $675,000 from 2015 to 2020, (Doc. 50-35 at 8), were reasonable.

Regardless, HHD's above point simply highlights the dispute of fact concerning the damages amount, i.e., the reasonable fees owed to HHD. Because there is a genuine dispute of material fact as to whether the fees charged were reasonable, HHD is not entitled to summary judgment on its breach of contract claim, but it is entitled to summary judgment on Taylor's affirmative defenses of statute of limitations and a failure to mitigate damages.

8

### B. Legal Malpractice Counterclaims

In her Counterclaims, Taylor alleges both "professional negligence" and "attorney malpractice." Because these two torts are used interchangeably in Florida law to apply to a breach of duty by an attorney, *see Dingle v. Dellinger*, 134 So. 3d 484, 487 (Fla. 5th DCA 2014), the Court analyzes these claims together as they are duplicative.

To succeed on a claim of professional negligence or legal malpractice, a party must prove three elements: (1) "the attorney's employment;" (2) "the attorney's neglect of a reasonable duty;" and (3) "the attorney's negligence as the proximate cause of loss to the client." *L. Off. of David J. Stern, P.A. v. Security Nat'l Serv. Corp.*, 969 So. 2d 962, 966 (Fla. 2007). "The third element regarding the loss to the client is not satisfied unless the plaintiff demonstrates that there is an amount of damages which the client would have recovered but for the attorney's negligence." *Tarleton v. Arstein & Lehr*, 719 So. 2d 325, 328 (Fla. 4th DCA 1998) (citation omitted). Ordinarily, proximate cause is "a question that should be left for the jury" and not decided on summary judgment. *See USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1313 (M.D. Fla. 2004) (Moody, J.) (citation omitted). But a plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Id.* (citation omitted). "Speculative evidence is insufficient" and "a mere possibility of such causation is

9

not enough." *See Steffen v. Akerman Senterfitt*, No. 8:04-CV-1693, 2005 WL 3277894, at *6, *8 (M.D. Fla. Dec. 2, 2005) (Bucklew, J.) (citation omitted).

Both parties agree as to the first element: Taylor employed HHD as her attorney. (Doc. 46 at 11; Doc. 53 at 15.) But HHD argues that Taylor has not made a prima facie showing on the other elements.

Taylor alleges three ways that HHD neglected its professional duty. First, she claims that HHD "billed her in amounts in excess of what is reasonable and permitted under Florida law." (Doc. 53 at 15.) But Taylor did not allege this theory of liability in her original counterclaim, (Doc. 7), and parties are not permitted to "create a new claim or theory of liability" in response to a summary judgment motion, *see Aning v. Fed. Nat'l Mortg. Ass'n*, 663 F. App'x 773, 775 (11th Cir. 2016). Additionally, Taylor cites no case holding that excessive billing constitutes legal malpractice. In fact, none seems to exist under Florida law. *See Dadic v. Schneider*, 722 So. 2d 921, 923 (Fla. 4th DCA 1998) ("We further affirm the summary judgment as to the [legal] malpractice count for excessive fees. No authority supports a cause of action on this theory."). Therefore, summary judgment is granted to HHD on this theory of liability.

Second, Taylor alleges that "HHD failed to properly advise of the risk of non-collection of attorneys' fees from Taylor's former spouse." (Doc. 53 at 15-16.) She claims that HHD continuously promised that her ex-husband would be required to reimburse her

10

for attorney's fees and that HHD failed to explain that it was unlikely she would receive a final judgment that included attorney's fees. (Doc. 53 at 16). She points to her expert's report, (Doc. 50-35 at 7), and to an email from HHD stating that she could "seek[] reimbursement from [her ex-husband] at the end of the case" and that she was "strongly likely" to succeed given their disparate incomes. (Doc. 50-16.)

Third, Taylor alleges that HHD "failed to properly present the attorneys' fee claim to the trial court." (Doc. 53 at 16.) She points to her expert's report which explains that HHD did not file a motion for relief from the second postmarital agreement, which prevented her from receiving fees. (Doc. 53-35 at 7.) To be sure, this agreement is the same one she sought to enforce to keep her property separate, and Taylor faces an uphill battle of establishing that the state court could legally set aside the postmarital agreement or that HHD could ethically advocate to do so. Nonetheless, on both of these last two points, she satisfies her burden to "go beyond the pleadings and by her own affidavits" or other admissions on file, point to evidence in the record that demonstrates the existence of a genuine dispute of material fact for trial regarding whether HHD breached its duty in advising and representing her. *See Celotex Corp.*, 477 U.S. at 324.

HHD argues that, even if it breached its duty by failing to properly advise her, Taylor fails to show a genuine issue of causation. (Doc. 46 at 17-18.) Taylor makes two arguments as to proximate cause.

11

First, Taylor argues she would have received attorney's fees from her ex-husband if HHD was not negligent. This argument is speculative at best. *See Steffen*, 2005 WL 3277894, at *7. The postmarital agreement precluded either Taylor or her husband from recovering attorney's fees. (Doc. 47 ¶ 3.) And Taylor continuously said that she did not want to challenge her second postmarital agreement because it protected her investment account. (Doc. 50-25.) Even if HHD had challenged the agreement before the trial court, she presents no evidence other than her own deposition testimony that the trial court would have invalidated the agreement. (Doc. 53 at 20.) Even her own expert does not argue that the agreement could have been invalidated. Instead, the expert stated only that it was unreasonable for HHD to advise Taylor that there was a chance she received attorney's fees in the final judgment because the agreement barred it. (Doc. 50-35 at 7.)

Next, Taylor argues that HHD's breach of duty induced her to incur substantially more fees than she would have had she known that she would not recoup them from her ex-husband. (Doc. 53 at 20.) In her deposition Taylor stated that, had she been properly informed, she would not "have spent [her] entire life savings on attorneys" and she "would have found lawyers that [were not] so expensive." (Doc. 50-2 at 15.) While both parties dispute whether the facts support this claim, neither briefs the legal question of whether these types of damages can support a claim of legal malpractice under Florida law and the Court declines to decide that novel question at this stage. Because Taylor points to

12

information in the record to support her causation theory, there is a material dispute of fact on this point. *See Celotex Corp.*, 477 U.S. at 323.

## IV.   CONCLUSION

Because there is a genuine dispute of fact as to whether HHD's fees were reasonable, HHD is not entitled to summary judgment on its breach of contract claim. But because HHD pointed to sufficient evidence in the record to show there is no dispute over Taylor's affirmative defenses, and Taylor failed to rebut it, HHD is entitled to summary judgment as to Taylor's failure to mitigate and statute of limitations defenses. And because Taylor puts forth sufficient evidence to create a genuine dispute of material fact as to her malpractice claims that HHD failed to properly advise of the risk of non-collection of attorneys' fees from Taylor's former spouse, HHD is not entitled to summary judgment on Taylor's attorney malpractice claims.

Accordingly, the following is **ORDERED**:

1. HHD's Amended Motion for Summary Judgment (Doc. 46) is **GRANTED-IN-PART** and **DENIED-IN-PART.** Specifically, the Court **DENIES** summary judgment on HHD's breach of contract claim and **GRANTS** summary judgment as to Taylor's affirmative defenses of statute of limitations and failure to mitigate. The Court **DENIES** summary judgment for HHD on Taylor's claims for legal malpractice.

13

**ORDERED** in Tampa, Florida, on August 8, 2022.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge